OPINION
{¶ 1} Plaintiff-appellant, Lois J. Haynes, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendantappellee, Donald V. Mussawir. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} The incident from which this case arises occurred on December 13, 2001. On that date, plaintiff arrived at an office building parking lot for her scheduled 5:30 p.m. appointment with a commercial tenant. When she arrived for the appointment in her automobile, it was still light outside. Plaintiff observed a hole in the parking lot on the driver's side of her automobile as she proceeded to the office building. (See Haynes depo., at 43.) Upon seeing the hole, she was able to walk around it on her way into the office building. (See Haynes affidavit, at paragraph 7.) At that time, she made a mental note to herself to be cognizant of the hole when she returned to her vehicle after the appointment. (See Haynes depo., at 44.)
 {¶ 3} Plaintiff's appointment ended around 6:30 or 7 p.m. As she approached her vehicle in the parking lot after the appointment, she fell and sustained injury. When asked at her deposition whether she noticed the hole when she returned to her vehicle, plaintiff stated, "No, I just stepped away — I was stepping away from where I thought it was." Id. at 47-48. Affidavit statements indicate the presence of two holes in the area where plaintiff fell. Keith E. Thomas states that on the day after plaintiff's fall, he went to the location of the fall and saw "two holes that were side by side, one approximating two feet by two feet, the other one was one and a half feet by one and a half feet. Both of them were anywhere from six to eight inches deep in the blacktop area." (Thomas affidavit, at paragraph 8.) Which of the two side-by-side holes caused plaintiff to trip is uncertain. The only evidence in the record as to the origin of the holes is defendant's deposition, which indicates that the depressions were caused by "[t]he weight of the dumpster and the truck combined." (Mussawir depo., at 27.)
 {¶ 4} Plaintiff stated that when she exited the office building, "it was dark out. There was no light fixture in the area and no light shining in the parking area where I had parked." (Haynes affidavit, at paragraph 9.) At her deposition she was asked whether there were any other lights illuminating the parking lot. Plaintiff stated, "There might have been one at the other end. I don't know. There wasn't — it was dark." (Haynes depo., at 45-46.) Plaintiff continued, "It wasn't like — I don't know if I would say it was black, pitch black, because I could see my car." Id. at 46. Plaintiff stated that she had parked in the parking lot many times, but she could not recall parking in the area where she parked on the day of her fall. Id. at 41. She stated that she had previously gone to the parking lot "late at night and been a little concerned about the lack of lighting." Id. at 41. Mr. Thomas averred that he did not see any lights that illuminated the area where she fell. (See Thomas affidavit, at paragraph 11.) Plaintiff stated in her affidavit that visibility was poor for her because of the darkness and "a developing cataract." (Haynes affidavit, at paragraph 12.) Plaintiff also stated that it "had been raining some throughout that day and evening." Id.
 {¶ 5} In July 2002, plaintiff filed a complaint against defendant in the Franklin County Court of Common Pleas, alleging negligence. The complaint alleged that plaintiff stepped into a hole in a parking area owned by defendant and fell and struck her head on a cement curb. Defendant filed an answer and admitted to the fact that he was engaged in the business of owning, operating, managing, and maintaining rental property located at 4701 Olentangy River Road, Columbus, Ohio. In his answer, defendant asserted, inter alia, that the risk to plaintiff was open and obvious.
 {¶ 6} On August 21, 2003, defendant moved for summary judgment, arguing that the risk of harm presented by the hole was an open and obvious risk, the risk was known to plaintiff prior to her fall, and defendant had no duty to illuminate the parking area where plaintiff fell. On September 4, 2003, plaintiff filed a memorandum contra to defendant's motion for summary judgment, arguing that plaintiff had established that the hole was not open and obvious, that defendant breached his duty to warn plaintiff of the condition and his duty to repair and maintain the parking area, and that plaintiff was unaware of the existence of a second hole.
 {¶ 7} On January 5, 2004, the trial court entered a decision and entry sustaining defendant's motion for summary judgment. On January 6, 2004, plaintiff filed a "Supplemental Memorandum Re Open and Obvious Danger Doctrine Does Not Abrogate a Landlord's Duty Under Ohio Revised Code 5321.04(A)(2)." On January 30, 2004, plaintiff filed a notice of appeal and a motion to vacate the January 5, 2004 entry. The appeal was docketed under case No. 04AP-110. Also on January 30, 2004, the trial court entered an "Addendum to the January 5, 2004 Decision and Entry Sustaining the August 21, 2003 Motion of Defendant for Summary Judgment." On February 2, 2004, the trial court deemed plaintiff's January 30, 2004 motion as moot. On February 3, 2004, plaintiff filed another notice of appeal. This appeal was docketed under case No. 04AP-117. On February 10, 2004, this court sua sponte consolidated these appeals for purposes of record filing, briefing, and oral argument.
 {¶ 8} In this consolidated appeal, plaintiff asserts the following three assignments of error:
1. The trial court erred in granting summary judgment for defendant-appellee.
2. The trial court erred in finding that the cause of plaintiff-appellant's injury was as a matter of law open and obvious when that issue was one of fact for the jury.
3. The trial court erred in holding that the judicial finding of an open and obvious risk abrogated defendant-appellant's duty to plaintiff-appellee [sic] arising from known preexisting violations of specific statutory and municipal safety laws and regulations which directly caused injuries to the plaintiff-appellant.
 {¶ 9} As the issues raised by plaintiff's assignments of error are interrelated, we shall address them together. Plaintiff's first assignment of error generally alleges that the trial court erred in granting summary judgment for defendant. By her second assignment of error, plaintiff asserts that the trial court erred in finding that the cause of her fall was an open and obvious danger. Lastly, plaintiff's third assignment of error alleges that the trial court made an erroneous holding regarding the open-and-obvious doctrine and alleged duties arising from specific statutory and municipal safety law.
 {¶ 10} Appellate review of a lower court's granting of summary judgment is de novo. Hahn v. Satullo, 156 Ohio App.3d 412,2004-Ohio-1057, at ¶ 33. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools Bd. of Edn. (1997),122 Ohio App.3d 378, 383, citing Dupler v. Mansfield Journal Co.,Inc. (1980), 64 Ohio St.2d 116, 119-120, certiorari denied (1981),452 U.S. 962, 101 S.Ct. 3111.
 {¶ 11} Summary judgment is proper when a movant for summary judgment demonstrates that: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd.
(1997), 78 Ohio St.3d 181, 183.
 {¶ 12} "[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." Strother v. Hutchinson (1981),67 Ohio St.2d 282, 285. Whether a duty exists in a negligence action is a question of law. Benton v. Cracker Barrel Old Country Store, Inc. (June 5, 2003), Franklin App. No. 02AP-1211, 2003-Ohio-2890, at ¶ 11. "It is axiomatic that, under the common law of premises liability, the status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) defines the scope of the legal duty that the responsible party owes the entrant." Shump v. First Continental-RobinwoodAssoc. (1994), 71 Ohio St.3d 414, 417.
 {¶ 13} In the case at bar, it is undisputed that plaintiff was in the parking area, which was owned by defendant, for purposes of her appointment with a commercial tenant in the office building located at 4701 Olentangy River Road. Under these facts, plaintiff was on the premises as a business invitee under common law. "An owner or occupier of the premises ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." Klauss v.Glassman, Cuyahoga App. No. 84799, 2005-Ohio-1306, ¶ 13, citing Paschalv. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203. However, a landowner is not an insurer of an invitee's safety. Paschal.
 {¶ 14} The trial court determined that the existence of the holes in the parking lot was an open and obvious condition, and therefore defendant had no duty to warn plaintiff of the holes. The open-and-obvious doctrine states that "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, at ¶ 5, citing Sidle v. Humphrey (1968), 13 Ohio St.2d 45, paragraph one of the syllabus. "The rationale underlying this doctrine is `that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" Armstrong, at ¶ 5, citing Simmers v.Bentley Constr. Co. (1992), 64 Ohio St.3d 642, 644. "The determination of the existence and obviousness of a danger alleged to exist on a premises requires a review of the facts of the particular case." Miller v. BeerBarrel Saloon (May 24, 1991), Ottawa App. No. 90-OT-050. Moreover, when it is applicable, "the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." Armstrong, at ¶ 5.
 {¶ 15} According to plaintiff, notwithstanding an application of the open-andobvious doctrine, defendant had obligations and duties by statute, citing R.C. 5321.04, which provides as follows:
(A) A landlord who is a party to a rental agreement shall do all of the following:
(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
(3) Keep all common areas of the premises in a safe and sanitary condition; * * *
 {¶ 16} Additionally, plaintiff states that "[p]ursuant to the authorization in foregoing O.R.C. 5321.04(A)(1), the City of Columbus has promulgated" safety codes. (Plaintiff's brief, at 10.) Plaintiff cites to the following ordinances in the Columbus City Codes:[1]
3342.09 Dumpster Area.
A dumpster, when provided, shall be in a designated area that does not interfere with any aisle, driveway, parking space, loading space or other circulation area. The location of a dumpster, if any, shall be shown on the site plan with proper loading and maneuvering space; and for the purpose of location, shall be treated as a structure. A dumpster shall be screened from view on all sides. Such area shall not be located in any required yard or setback and shall be maintained according to the requirements of the board of health.
* * *
3342.12 Lighting
Any parking lot containing ten (10) or more parking spaces, which is used during non-daylight hours shall be illuminated during such hours to provide an average intensity of not less than one-half (1/2) foot candles of light as measured at the surface of the parking space to assist both pedestrians and motorists in avoiding accidents. Any lights or light fixtures used to illuminate any parking lot shall be selected and so arranged as to direct and reflect the light away from any adjacent property or public way.
* * *
3342.14 Maintenance.
The owner or operator of property used for parking and loading shall maintain such area in good condition so that it is safe, clean, dust-free, attractive and free of any hazard, nuisance or other unsafe condition. Striping for parking spaces shall be maintained in good condition.
 {¶ 17} Regarding her third assignment of error, plaintiff is correct to the extent that the open-and-obvious doctrine does not necessarily abrogate a landlord's duty under statutory landlord tenant law. There is support in case law for the proposition that the open-and-obvious doctrine does not abrogate a landlord's statutory duty imposed through R.C. 5321.04(A). See Schoefield v. Beulah Rd., Inc. (Aug. 9, 1999), Franklin App. No. 98AP-1475, and Harris v. Richmond Park Apartments,
Cuyahoga App. No. 84067, 2004-Ohio-4081, at ¶ 24.
 {¶ 18} In Schoefield, this court made the following determination: "As a matter of law, the open and obvious danger doctrine did not abrogate [the landlord's] duty under R.C. 5321.04(A)(2) to repair the defective landing/steps and, as to factual issues, reasonable minds could come to different conclusions as to the comparative negligence of the parties." In Harris, the plaintiff claimed a breach of a duty imposed upon landlords through the provisions of R.C. 5321.04(A). The court reasoned that because "the openand-obvious doctrine goes to negating the common law duty of ordinary care owed by premises owners to their business invitees," and the landlord's duty pursuant to the provisions of R.C.5321.04(A) relates to a different duty, "[t]he open-and-obvious doctrine does not negate defendants landlord's statutory duty." Harris, at ¶ 24, citing Schoefield.
 {¶ 19} Contrary to plaintiff's argument, the trial court correctly determined that this case does not involve R.C. Chapter 5321. Most simply, there is no allegation that defendant is a "landlord" as that term is defined for purposes of R.C. Chapter 5321. For purposes of R.C. Chapter 5321, "`landlord' means the owner, lessor, or sublessor ofresidential premises, the agent of the owner, lessor, or sublessor, or any person authorized by the owner, lessor, or sublessor to manage the premises or to receive rent from a tenant under a rental agreement." (Emphasis added.) R.C. 5321.01(B). There has been no assertion that the premises on which plaintiff was injured were "residential premises," as that term is defined for purposes of R.C. Chapter 5321. See R.C. 5321.01(C) ("`Residential premises' means a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant.") Therefore, the statutory duties imposed upon landlords pursuant to the provisions of R.C. 5321.04(A) are not applicable to this case. Accord Dotav. CTW Development Corp. (Jan. 3, 2001), Mahoning App. No. 99 CA 191 (stating that R.C. 5321.04 does not apply to commercial premises), citingHendrix v. Eighth Walnut Corp. (1982), 1 Ohio St.3d 205, 208.
 {¶ 20} Regarding the Columbus City Code provisions cited by plaintiff, we note that the holding in Schoefield, stating that the open-and-obvious doctrine does not abrogate a landlord's duty under R.C.5321.04(A)(2), is limited to statutory landlord tenant law. As the trial court properly found, this case does not involve R.C. Chapter 5321. Whether or not the Columbus City Code provisions may have been relevant if R.C. 5321.04(A) applied in this case, we find that it is not applicable to the facts of this case.
 {¶ 21} Darkness in the parking lot at the time of plaintiff's fall has been raised as an issue in this case. We note that "[o]ne who maintains a private motor vehicle parking area, for the accommodation of those he serves in a professional or business way, is generally under no legal obligation to illuminate the same at night * * *." Jeswald v. Hutt
(1968), 15 Ohio St.2d 224, paragraph one of the syllabus. "Neither a business owner nor a landlord has a common-law duty to illuminate a parking lot." Lenhof v. New York Life Ins. Co. (1997), Hamilton App. No. C-950957, citing Jeswald, paragraph one of the syllabus, Sanders v.Bellevue Manor Apts. (Jan. 3, 1996), Lorain App. No. 95CA006067, andBurns v. Barrington Group, Inc. (Nov. 2, 1992), Fairfield App. No. 2-CA-92. "`Darkness' is always a warning of danger, and for one's own protection it may not be disregarded." Jeswald, at paragraph three of the syllabus.
 {¶ 22} In certain circumstances, the presence of "attendant circumstances" may preclude the application of the open-and-obvious doctrine. An attendant circumstance distracts an invitee and reduces the degree of care an ordinary person would exercise at the time. See Cumminv. Image Mart, Inc., Franklin App. No. 03AP-1284, 2004-Ohio-2840. Regarding the issue of darkness, at least one Ohio state appellate court has determined that "the fact that it was dark is not an attendant circumstance to extend liability." Huey v. Neal, 152 Ohio App.3d 146,2003-Ohio-391, at ¶ 12. But see Hudak v. 510 Gypsy Lane, Inc. (Mar. 26, 1999), Trumbull App. No. 98-T-0129 (stating in dictum that "[e]xamples of possible attendant circumstances include heavy vehicular or pedestrian traffic in the vicinity of the sidewalk, poor lighting that causes shadows to be cast over the sidewalk, or a foreign article or substance on the sidewalk.")
 {¶ 23} The record reveals that plaintiff had noticed a hole in the parking lot prior to entering the office building for her appointment, and, in light of seeing the hole, she made a mental note to be careful when she returned to her automobile. Thus, she was aware of the hazard the hole presented.[2] The record also reveals that plaintiff had noticed the lighting situation in the parking lot prior to her visit on December 13, 2001.[3] Regarding the amount of light in the parking lot, plaintiff stated in her deposition that it was not "pitch black" and that she could see her vehicle in the parking lot. Thus, the facts reveal that after her appointment in the office building, plaintiff proceeded in some degree of darkness to her vehicle, which she could see, with an awareness of the existence of at least one of the side-by-side holes.
 {¶ 24} Upon our review of the facts in this case, we conclude that the side-by-side holes in the parking lot were open and obvious. In reaching this conclusion, we concur with the trial court's determination that "the record is devoid of any evidence that the holes in the parking lot were hidden, concealed and not discernible by examination." (Jan. 5, 2004 Decision, at 6.) Additionally, under the facts of this case, the lack of illumination in the parking lot was not an attendant circumstance that would negate the application of the open-and-obvious doctrine. Therefore, defendant owed no duty to plaintiff with respect to open and obvious conditions in the parking lot where plaintiff fell.
 {¶ 25} Because the open-and-obvious doctrine applies in this case, such as to negate defendant's duty to warn, plaintiff's claim for negligence fails. When we construe the evidence in the record before this court most strongly in favor of plaintiff, we find that reasonable minds could only come to the conclusion that no genuine issue of material fact exists on the issue of premises liability, and defendant is entitled to judgment as a matter of law. The trial court properly granted summary judgment in favor of defendant.
 {¶ 26} Based on the foregoing, we overrule plaintiff's three assignments of error and therefore affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Klatt and Sadler, JJ., concur.
[1] More specifically, these provisions are contained within Columbus's Zoning Code.
[2] We note that there is no evidence in the record indicating that the parking lot was littered with holes or depressions. Plaintiff had successfully walked around one of the two side-by-side holes on her way into the office building.
[3] Nothing in the record indicates that plaintiff, or anyone else, submitted a complaint to anyone regarding the lighting situation in the parking lot, prior to her fall.