OPINION
{¶ 1} Plaintiff-appellant, Phillip K. Cordell ("appellant"), appeals from the judgment of the Court of Claims of Ohio in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), on appellant's negligence claim arising from appellant's fall from a curb while being transported on the grounds of Madison Correctional Institution ("MaCI"). Because the judgment of the Court of Claims is supported by competent, credible evidence, we affirm. *Page 2 
 {¶ 2} On August 29, 2005, at approximately 4:45 a.m., appellant, an inmate at MaCI was being led by corrections officers through the MaCI parking lot toward a bus bound for the Corrections Medical Center ("CMC"), in Columbus, Ohio. While proceeding through the parking lot, appellant fell on a curb. At the time, appellant was handcuffed to another inmate, and there was at least an arm's-length distance between appellant and the pair of inmates handcuffed together and walking in front of him. There were approximately eight to 12 inmates being escorted at this time, and all were handcuffed in pairs. Appellant was in the third or fourth group from the front.
 {¶ 3} Appellant filed this complaint in the Court of Claims on December 30, 2005, alleging ODRC was negligent in providing insufficient lighting and in escorting him in a manner such that he was unable to see the curb. The trial court bifurcated the issues of liability and damages. Following a bench trial on May 10, 2007, the magistrate issued a decision on March 10, 2008 finding the curb was an open and obvious condition and that ODRC did not commit a breach of duty owed to appellant. In conclusion, the magistrate found appellant failed to prove his claim by a preponderance of the evidence.
 {¶ 4} Appellant filed objections to the magistrate's decision, and on July 23, 2008, the trial court issued a decision overruling appellant's objections and adopting the magistrate's decision. This appeal followed, and appellant brings nine assignments of error[1] for our review:
 ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT AND MAGISTRATE ERRED IN APPLYING THE OPEN AND OBVIOUS DOCTRINE. *Page 3 
 ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT AND MAGISTRATE ERRED, EVEN IF THE OPEN AND OBVIOUS DOCTRINE APPLIES, SINCE NEITHER CONSIDERED THE ATTENDANT OR EXTENUATING CIRCUMSTANCES.
 ASSIGNMENT OF ERROR NO. 3:
 THE TRIAL COURT ERRED IN FAILING TO CONSIDER PLAINTIFF-APPELLANT'S INABILITY OR FREEDOM TO EXERCISE DISCRETION IN SELECTING THE ROUTE AND AVOIDING HAZARDS CREATED BY DEFENDANT-APPELLEE.
 ASSIGNMENT OF ERROR NO. 4:
 THE TRIAL COURT ERRED IN NOT CONSIDERING THE FACT DEFENDANT-APPELLEE IGNORED AN OPEN RAMP WHICH WOULD NOT REQUIRE INMATES TO NAVIGATE OVER A CRUMBLING CURB WHICH IMPROPERLY EXTENDED INTO THE ROADWAY.
 ASSIGNMENT OF ERROR NO. 5:
 THE TRIAL COURT ERRED WHEN IT IGNORED AND FAILED TO RECOGNIZE REASONABLE CARE TO BE AFFORDED DISABLED, ILL AND PARTIALLY BLIND INMATES WHO WERE HAND-CUFFED AND HAD TO BE ATTENTIVE TO MAINTAIN DISTANCE BETWEEN INMATES IN LINE, AS WELL AS INSTRUCTIONS OF THE ESCORT OFFICER.
 ASSIGNMENT OF ERROR NO. 6:
 THE COURT ERRED IN FINDING THE LIGHTING WAS ADEQUATE, IN NOT NOTING THE LIGHTS WERE ON A FORD F-1 TRUCK WHO WAS TO THE RIGHT REAR OF THE COLUMN AND THE EXISTING LIGHTING WAS PROVIDED BY ONE LIGHT POLE GIVING OFF AN AMBER GLOW, AN OPAQUE LIGHT. *Page 4 
 ASSIGNMENT OF ERROR NO. 7:
 THE COURT ERRED IN RELYING AND APPLYING A DOCTRINE OF OPEN AND OBVIOUS TO INMATES WHO ARE NOT GIVEN FREE CHOICE NOR THE MANNER OF DEALING WITH DEFECTS AND DANGERS CREATED BY THEIR KEEPER.
 ASSIGNMENT OF ERROR NO. 8:
 THE COURT ERRED IN PERMITTING C.O. HAWES AND CAPTAIN HOLCOMB TO SAY THEY COULD SEE THE CURB SINCE THEY WERE NOT IN LINE SHACKLED AND NOT IN POSITION TO SAY WHAT WAS VISIBLE FROM PLAINTIFF'S POSITION.
 ASSIGNMENT OF ERROR NO. 9:
 THE COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 5} Together these nine assigned errors assert the trial court erred in finding ODRC had no liability in this matter.
 {¶ 6} To prevail on his claims against appellee, appellant was required to establish appellee owed appellant a duty of care, appellee breached that duty, and appellee's breach of duty was the proximate cause of appellant's injury. Dean v. Dept. of Rehab. Corr. (Sept. 24, 1998), 10th Dist. No. 97API12-1614, citing Lopez v. Ohio Dept. ofTransp. (1987), 37 Ohio App.3d 69, 70. Typically under Ohio law, premises liability is dependent upon the injured person's status as an invitee, licensee, or a trespasser. Gladon v. Greater Cleveland RegionalTransit Auth. (1996), 75 Ohio St.3d 312, 315. However, with respect to custodial relationships between the state and its inmates, the state has a duty to exercise reasonable care to prevent prisoners in its custody from being injured by dangerous conditions about which the state knows or should know. *Page 5 Dean, citing Moore v. Ohio Dept. of Rehab. Corr. (1993),89 Ohio App.3d 107, 112. Though prison officials are not insurers of an inmate's safety, they generally owe inmates a duty of reasonable care and protection from harm. Williams v. Ohio Dept. of Rehab. Corr., 10th Dist. No. 04AP-1193, 2005-Ohio-2669, ¶ 8, citing Briscoe v. Ohio Dept.of Rehab. Corr, 10th Dist. No. 02AP-1109, 2003-Ohio-3533. Nonetheless, "under the `open and obvious' doctrine, an owner or occupier of property owes no duty to warn * * * of open and obvious dangers on the property. * * * The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning, and that the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." (Citations omitted.) Id., citing Duncan v. Capitol SouthComm. Urban Redevelopment Corp., 10th Dist. No. 02AP-653, 2003-Ohio-1273, ¶ 27, quoting Anderson v. Ruoff (1995),100 Ohio App.3d 601, 604, appeal not allowed, 73 Ohio St.3d 1414. The "open and obvious doctrine," where warranted, may be applied in actions against the ODRC with the result that ODRC would owe no duty to an injured inmate. Id.
 {¶ 7} Further, when reviewing whether a judgment is against the manifest weight of the evidence, this court has stated, "[j]udgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence." Ensman v. Ohio Dept. of Rehab. Corr, 10th Dist. No. 06AP-592, 2006-Ohio-6788, ¶ 4, citing C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. In addressing a judgment of the trial court on the basis that the verdict is against the manifest weight of the evidence, an appellate court conducts the same manifest-weight analysis in both criminal and civil cases. Id., citing *Page 6 Flowers v. City of Whitehall, 10th Dist. No. 01AP-1150, 2002-Ohio-3890, ¶ 12. The court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. However, the credibility of witnesses is an issue primarily for the trier of fact, who stands in the best position to evaluate such matters. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77. If the evidence is susceptible to varied conclusions, this court must interpret it in a manner consistent with the findings of fact, verdict, and judgment of the trial court. Ensman, at ¶ 4, citing Briscoe v. Ohio Dept. of Rehab. Corr, 10th Dist. No. 02AP-1109, 2003-Ohio-3533, ¶ 19.
 {¶ 8} Because they are interrelated, appellant's first, third, fourth, sixth and seventh assignments of error will be addressed together. In these assigned errors, appellant contends the trial court erred in applying the open and obvious doctrine. According to appellant, the open and obvious doctrine cannot be applied here because appellant was not free to select his route of travel as the route was chosen by appellee, and appellant was unfamiliar with the selected route.
 {¶ 9} Despite appellant's contention to the contrary, if warranted, the open and obvious doctrine can be applied in actions against the ODRC with the result that the ODRC would owe no duty to an injured inmate. See Williams. Further, appellant's inability to select his route of travel does not mean the curb was not an open and obvious condition. In other words, solely because this route was selected by the corrections *Page 7 
officers escorting the inmates to the bus, such does not render an open and obvious condition no longer open and obvious.
 {¶ 10} Open and obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection. Cooper v. MeijerStores Ltd. Partnership, 10th Dist. No. 07AP-201, 2007-Ohio-6086, ¶ 13, citing Lydic v. Lowe's Cos., Inc., 10th Dist. No. 01AP-1432, 2002-Ohio-5001, ¶ 10. As this court has held, "[a] person does not need to observe a dangerous condition for it to be an `open and obvious' condition under the law; rather, the determinative issue is whether the condition is observable." Id. Even in cases where the plaintiff did not actually notice the condition until after he or she fell, this court has found no duty where the plaintiff could have seen the condition if he or she had looked. Id. Thus, a pedestrian's failure to avoid an obstruction because he or she did not look down is no excuse. Id., citingJeswald v. Hutt (1968), 15 Ohio St.2d 224.
 {¶ 11} Accordingly, simply because he was not free to select his route or because there may have been an alternate route available does not render the condition no longer open and obvious. Rather, whether or not the curb was an open and obvious condition depends on whether it was observable.
 {¶ 12} Plaintiff testified he was not looking down where he was walking at the time he fell, and that he did not see the curb before he tripped over it. However, on re-direct, appellant testified that even if he had been looking down, he would not have been able to see the curb. Appellant also described that though he was in the third or fourth group of inmates, no one in front of him tripped or fell on the curb. Plaintiff also testified there was only dim, amber-colored lighting in the parking lot, and though there was a chase vehicle *Page 8 
following the group of inmates, the vehicle did not have its lights on and shed no light in the area upon which they were traveling.
 {¶ 13} Andrew Franz, the inmate who was handcuffed to appellant at the time of the incident, testified that there was no lighting in the parking lot and that the chase vehicle did not have any lights turned on. Franz stated that though he did not see the curb before the incident, he did see it after appellant fell.
 {¶ 14} The trial court also heard testimony from another inmate at MaCI, Paul Tracy. Though he was not there the night of the August 29, 2005 transport, Tracy testified he has made the trip to the CMC on several occasions. According to Tracy, there is dim lighting from the parking lot lights and the chase vehicle only illuminates its parking lights.
 {¶ 15} In contrast, the corrections officers who testified at trial explained the parking lot is always illuminated at night and that the chase vehicle's headlights are illuminated, as that is standard operating procedure when escorting inmates. Corrections Officer ("CO") Jonathan T. Clunk testified he would have been operating the chase vehicle at the time of this incident though he admitted he did not specifically remember the incident itself. CO Clunk explained there is pole lighting in the parking lot, and that in accordance with MaCI's standard operating procedure, he always illuminates the chase vehicle's headlights when transporting inmates.
 {¶ 16} Correctional Captain Mickey Holcomb testified the parking lot is illuminated with high-pressure sodium lights that give off an orange glow and "makes the night appear like daytime out there." (Tr. 91.) As explained by Captain Holcomb, this is to *Page 9 
ensure there are no dark areas in the parking lot for inmates to hide or to attempt an escape.
 {¶ 17} CO Ronald Hawes testified he was one of the escorts on the night of August 29, 2005. When asked about the lighting, CO Hawes stated: "It was lit up pretty good, because behind me there's an escort vehicle that has its headlights on, too, coming across there. There's always — you have the inmates, then me and my strong side of them off to the left, and then the truck is right behind with headlights on." (Tr. 97.) In addition to the escort vehicle's lights, the parking lot is illuminated by the "Zone A yard lights" and the Zone A entry is lit up as well. Id. CO Hawes stated it was bright enough that he could clearly see where he was going and that the curb was clear and out in the open.
 {¶ 18} Given the record, the trial court, as trier of fact, could resolve the disputed evidence and conclude the area was sufficiently lit and that the curb was indeed observable. Thus, we cannot conclude the trial court erred in finding an open and obvious condition as a result of a trial that produced the noted facts of this case. For these reasons, the trial court's finding of an open and obvious condition is not against the manifest weight of the evidence, and appellant's first, third, fourth, sixth and seventh assignments of error are overruled.
 {¶ 19} Attendant circumstances, however, act as an exception to the open and obvious doctrine. Cooper, at ¶ 15, citing McGuire v. Sears,Roebuck Co. (1996), 118 Ohio App.3d 494, 498-499. An attendant circumstance is a factor that contributes to the fall and is beyond the control of the injured party. Id., citing Backus v. Giant Eagle,Inc. (1996), 115 Ohio App.3d 155, 158. It can consist of "any distraction that would come to *Page 10 
the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." Id., quoting McGuire, at 499, quoting McLain v. Equitable Life Assur.Co. (Mar. 13, 1996), Hamilton App. No. C-950048.
 {¶ 20} Appellant asserts in his second and fifth assignments of error that the attendant circumstances that exist here consist of: (1) appellant's vision impairment[2] and weakness due to internal bleeding; (2) appellant being handcuffed to the person next to him with two sets of inmates in front of him; (3) appellant not being free to choose his route; (4) the lot's dim lighting; (5) the safer route steps away; and (6) the defect was crumbling and not readily apparent.
 {¶ 21} The trial court considered appellant's argument that attendant circumstances existed such that the open and obvious doctrine was not applicable, and concluded no such attendant circumstances were present. Though appellant's right wrist was handcuffed to Franz's left wrist, appellant was otherwise unrestrained. The inmates were traveling in pairs of two, with anywhere from "an arm's length" to three feet between the groups. Thus, the evidence supports the trial court's finding that appellant was walking with little impairment. We have discussed the lighting issue, supra, and for the reasons stated previously, find the evidence supports the trial court's finding that the lighting was not insufficient so as to render the curb obstructed and unobservable. Moreover, as noted by this court, at least one Ohio state appellate court has determined that "`the fact that it was dark is not an attendant circumstance to extend liability.'" Haynes v. Mussawir, 10th Dist. No. 04AP-110, 2005-Ohio-2428, ¶ 22, quoting Huey v. *Page 11 Neal, 152 Ohio App.3d 146, 2003-Ohio-391, ¶ 12 (under the facts, the lack of illumination in the parking lot was not an attendant circumstance that would negate the application of the open and obvious doctrine).
 {¶ 22} Appellant also contends his physical illness rendered him too weak for the transport. However, there is no evidence appellant informed anyone that he was too weak to make the walk to the bus or that he was unable to see. More importantly, however, "an individual's particular sensibilities do not play a role in determining whether attendant circumstances make the individual unable to appreciate the open and obvious nature of the danger." Aycock v. Sandy Valley Church ofGod, 5th Dist. No. 2006 AP 09 0054, 2008-Ohio-105, ¶ 27.
 {¶ 23} The trial court heard the testimony regarding the path chosen by the corrections officers, the way in which the inmates were transferred, and the nature of the surrounding circumstances. After hearing the evidence, the trial court concluded attendant circumstances did not exist sufficient to negate the application of the open and obvious doctrine. While we appreciate the dissent's concern with this case involving the restrictions in the manner in which appellant was proceeding, we believe the trier of fact took such evidence into consideration. It is also significant that appellant was in the third or fourth group of inmates traversing the lot, the inmates in front of appellant negotiated the curb without incident, and their actions would have been clearly visible to appellant. We do not find, based upon the evidence in the record, that the trial court's conclusion is against the manifest weight of the evidence. Therefore, appellant's second and fifth assignments of error are overruled. *Page 12 
 {¶ 24} In his eighth assignment of error, appellant contends the trial court erred in allowing CO Hawes and Captain Holcomb to testify regarding their ability to see the curb at issue since neither person was traversing the area in the same manner as appellant.
 {¶ 25} A trial court has broad discretion to admit or exclude evidence, and in the absence of an abuse of that discretion that results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings. Ford v. Ohio Dept. of Rehab. Corr., 10th Dist. No. 05AP-357, 2006-Ohio-2531, ¶ 67, citing Schultz v.Schultz (1996), 110 Ohio App.3d 715, 726, citing Krischbaum v.Dillon (1991), 58 Ohio St.3d 58, 66. An "abuse of discretion" "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 26} Captain Holcomb testified over objection that he was outside on August 29, 2005, and it was bright enough for him to see the ground. The trial court, as trier of fact, was aware that Captain Holcomb was neither handcuffed nor traversing the parking lot in the same manner as appellant. However, Captain Holcomb's testimony was nonetheless relevant as it was clearly "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," as the amount of lighting in the parking lot was in dispute. Evid. R. 401. For this same reason, there was no abuse of discretion in the admission of CO Hawe's testimony that the parking lot was illuminated. The testimony was relevant because it went to the issue of lighting. The trial court was aware of CO Hawes's placement at the time of the incident as CO Hawes explained he was escorting the inmates and was walking on foot on the left side of the group. *Page 13 
 {¶ 27} The weight to be given to CO Hawes's and Captain Holcomb's testimony about their ability to see the curb given that they were not traversing the grounds in the same manner as appellant is within the province of the trier of fact. Ensman, supra. Testimony is not rendered irrelevant and inadmissible simply because the trier of fact may accord it more or less weight than other testimony. Finding no abuse of discretion in the trial court's admission of CO Hawes's and Captain Holcomb's testimony, appellant's eighth assignment of error is overruled.
 {¶ 28} In his ninth assignment of error, appellant contends the trial court's judgment is against the manifest weight of the evidence. For the reasons already stated, we do not find appellant's position well-taken. To the contrary, we find there is competent, credible evidence to support the trial court's judgment and, therefore, such judgment cannot be reversed as being against the manifest weight of the evidence. Accordingly, appellant's ninth assignment of error is overruled.
 {¶ 29} For the foregoing reasons, appellant's nine assignments of error are overruled, and the judgment of the Court of Claims of Ohio is hereby affirmed.
Judgment affirmed.
BROWN J., concurs.
TYACK, J., dissents.
[1] These assignments of error are essentially a reiteration of the arguments made to the trial court as set forth in appellant's objections to the magistrate's decision.
[2] Throughout his brief, appellant makes references to being blind in his left eye. Appellant testified on direct examination that he has a scar on his left pupil impairing his vision "to where it's 20/60 or something of that nature." (Tr. 16.)